UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARIA SIERRA, EVELYN RODRIGUEZ, EDA RAUDA, and ANGELICA DERAS, on behalf of herself and All Others Similarly Situated | CIVIL ACTION |
| | NO. 15-0179 |
| VERSUS | |
| E.M.S.P., LLC, EDWIN A. MIRANDA, and SADIA ESTHER PALACIO | SECTION: "C"(4) |

## ORDER AND REASONS

Before the Court is a joint motion for settlement approval of a Fair Labor Standards Act ("FLSA") collective action originally brought against defendants E.M.S.P., LLC, Edwin Miranda, and Sadia Esther Palacio ("defendants") by four plaintiffs: Maria Sierra, Evelyn Rodriguez, Eda Rauda, and Angelica Deras. *See* Rec. Docs. 1 and 31. Between the time of the complaint and the filing of the joint motion, five additional plaintiffs consented to join the action: Maritza de La O, Elizabeth Garmendia, Mirna Murillo, Leidy Majia, and Migdalia Cuadra (all nine collectively "plaintiffs"). *See* Rec. Doc. 31-1. No opposition to the joint motion has been filed. For the following reasons, the Court grants the joint motion.

### I. Background

On January 26, 2015, the four original plaintiffs filed suit against defendants claiming two grounds for relief under the FLSA. *See* Rec. Doc. 1. First, that defendants' janitorial enterprise "willfully misclassified" the plaintiffs and similarly situated janitorial workers as independent contractors rather than employees of defendants. Rec. Doc. 1 at 3. Because

1

defendants often made the plaintiffs and other similarly situated janitorial workers work hours that would be overtime if they were employees, plaintiffs claim they are owed varying sums of unpaid wages from the three-year period preceding the date of the complaint. *See* Rec. Doc. 1 at 3–5. Second, that defendants retaliated against the four original plaintiffs when they complained about their hours and pay. *See id.* at 6. The original four plaintiffs' complaint purported to apply to "all persons who have worked as janitorial employees and have been misclassified by Defendant as independent contractors from three years preceding the filing of this action and the date of final judgment and who were not paid overtime compensation for all hours worked over forty (40) in a workweek." *Id.* at 4. While five additional plaintiffs consented to join the action, plaintiffs have not moved for class certification. *See* Rec. Doc. 28. Instead, plaintiffs and defendants now jointly move for the Court to accept a joint settlement agreement ("Settlement Agreement") that would extinguish the FLSA claims only of the plaintiffs currently before the Court. *See* Rec. Doc. 31.

The Terms of the Settlement Agreement

The Settlement Agreement is entered in the record at Rec. Doc. 31-2. The agreement provides a settlement fund of $200,000 to play claims of the nine plaintiffs, litigation and settlement costs, and attorneys' fees. *See id.* Besides agreeing to pay into the settlement fund, defendants admit no liability under FLSA or any other law or regulation. *See id.* at 2. The Settlement Agreement states that there "exists a dispute" as to matters such as the amount of time worked by plaintiffs, the amount owed by defendants to plaintiffs absent the agreement, and whether plaintiffs were in fact employees of defendant. *See id.*

The settlement fund from which the plaintiffs' claims will be paid totals $133,000. Costs and attorneys' fees also to be paid by defendants total $67,000, which is 33.5% of the original settlement amount of $200,000. Counsel for plaintiffs has submitted a billing log detailing the hours he has worked on the case and its settlement. *See* Rec. Doc. 31-3 at 5–15. It does not appear any party objects to the calculation of the attorneys' fees. *See* Rec. Doc. 31-1 at 17.

The amount paid to each of the nine plaintiffs varies based on 1) the disputed number of overtime hours worked by plaintiff and 2) whether or not the plaintiff raised a retaliation claim along with their overtime claim. *See* Rec. Doc. 31-2 at 7. As to unpaid overtime, each plaintiff will receive twice the amount of payment for their disputed number of unpaid overtime hours worked during the period in dispute. *See* Rec. Doc. 31-1 at 4–8. The calculation of disputed hours worked by each plaintiff appears to have depended on plaintiff's allegations, information provided by the defendant, and compromise of any discrepancy between the number of hours believed to have been worked by the plaintiff and defendant. *See id.* at 4 n.1. As to retaliation claims, all but two of the nine plaintiffs have asserted retaliation claims and settlement on each such claim varies between $4,560 and $6,573.50. *See id.* at 4–8.

## II. Approval of the Settlement

This Court must approve any settlement reached by the parties which resolves the claims in this action brought under Section 16(b) of the FLSA.[1] The Court's role in this situation is somewhat comparable to that of a court in a settlement of a class action brought pursuant to

---

[1] The Court notes that it is only required by statute to approve the settlement as to disputed wages, not retaliation. *See* 29 U.S.C. § 216(b); *see also Hernandez v. Iron Container, LLC*, 2014 WL 633848 (S.D.Fla. 2014). The Court's analysis would change were there any sign that non-wage portions of the settlement have "contaminated" the wage settlement. *See Hernandez*, 2017 WL 633848 at *1–*2.

3

Federal Rule of Civil Procedure 23, yet important differences exist. This is particularly true where, as here, the proposed settlement does not seek to bind absent class members. *See* Rec. Doc. 31-1 at 14. As such, a court's review centers more on the substantive FLSA labor rights involved than due process concerns. *See Collins v. Sanderson Farms, Inc.*, 568 F.Supp.2d 714, 719 (E.D.La. 2008).

The FLSA was enacted for the purpose of protecting all covered workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 739 (1981); 29 U.S.C. § 202(a). The provisions of the statute are mandatory, and not subject to negotiation and bargaining between employers and employees. *Id.* at 707; *Lynn's Food Stores, Inc.*, 679 F.2d 1350 (11th Cir. 1982). Under Section 16(b), an employer who violates the FLSA is liable to the employee or employees affected in the amount of their unpaid minimum or overtime compensation, and for an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).

In order for a court to approve a settlement proposed by an employer and employees of a suit brought under the FLSA and enter a stipulated judgment, a court must determine that the settlement 1) represents a reasonable resolution of a bona fide dispute over FLSA provisions and 2) is fair. *Collins*, 568 F.Supp.2d at 719. A key focus is to ensure that an employer does not take advantage of its employees in settling their claim for wages. *See id.*

A.   <u>Bona Fide Dispute</u>

In order to convince a court that a bona fide dispute exists in a case like this, the parties generally must present a description of the dispute, a description of the employer's business and

the employees work, the employer's and the employees' reasons for disputing the employees' wage claims, and an estimation of the hours worked and applicable wage. *See Albu v. Delta Mechanical Inc.*, 2015 WL 4483992 *2 (D. Colo. June 30, 2015) (Mag. J. Tafoya) (citing *Collins*, 568 F.Supp.2d. at 718). Simply put, there must be some doubt that the plaintiffs would succeed on the merits through litigation of their claims.

The Court is satisfied by the facts presented that there is a bona fide dispute. *See generally* Rec. Docs. 1 and 31. The plaintiffs' complaint adequately describes the nature of the dispute, the business of the employer and work conducted by the plaintiffs. *See* Rec. Doc. 1. The complaint furthermore establishes plaintiffs' justification for the disputed wages. *See id.* The parties' joint memorandum in support of the motion for settlement approval establishes defendants' reasonable grounds for disputing plaintiffs' claims. *See* Rec. Doc. 31. It also provides an estimation of hours worked and the applicable wage, though the parties make clear that they continue to disagree about the actual number of hours worked by each plaintiff. *See id.* The parties further contend that plaintiffs "would face some challenges overcoming Defendants' defenses, including, for example but without limitation, the contention that Plaintiffs were independent contractors and therefore not eligible for overtime pay under the FLSA." *See* Rec Doc. 31-1 at 10. Defendants furthermore claim to have a valid good faith defense. *See id.* Finally, defendants dispute all the retaliation complaints raised by plaintiffs. *See id.*

The Court is further convinced of the remaining vitality of the bona fide dispute based on the fact that the parties appear to have conducted significant discovery since the filing of the complaint in this case. *See* Rec. Doc. 1 at 1; *see also Albu*, 2015 WL 4483992 at *2–*3

5

(approving settlement of case even without much discovery conducted due to absence of signs of sham litigation). Noting that most of the stated disputes here apparently center on findings of fact or mixed findings of fact and law and that a settlement hearing must not be turned into a trial, the Court is satisfied that a bona fide dispute exists. *See Collins*, 568 F.Supp. at 720.

b.   Fair and Reasonable

Although Rule 23 does not control FLSA collective actions, many courts have adopted some of Rule 23's procedures for assessing the fairness of a settlement. *See Collins*, 568 F.Supp.2d at 722. Courts accordingly consider the following when assessing a proposed settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives and absent class members." *Collins*, 568 F.Supp.2d at 722 (citing *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)). While conducting the analysis, the Court must keep in mind the "strong presumption" in favor of finding a settlement fair and remain aware that a settlement is a compromise, a yielding of highest hopes for certainty and resolution. *Collins*, 568 F.Supp.2d at 720.

After considering the *Reed* factors, 703 F.2d at 172, as modified to apply to this collective action under 29 U.S.C. § 216(b), the Court finds that the settlement is fair and reasonable.

**(1) The existence of fraud or collusion behind the settlement.**

Courts presume no fraud or collusion occurred, unless there is evidence to the contrary. *Collins*, 568 F.Supp.2d at 721. The Court is unaware of any evidence even hinting to the existence of fraud or collusion here. The parties have represented and the Court is satisfied that the settlement is the result of an arm's length negotiation and compromise. *See* Rec. Doc. 31-1 at 1. Accordingly, this factor weighs in favor of approving the settlement.

**(2) The complexity, expense, and likely duration of the litigation.**

The parties have jointly represented that they view the proposed settlement as a compromise struck to avoid the risks, inconveniences, delays, and costs that will result from further litigation. *See* Rec. Doc. 31-1 at 10–12. The parties specifically note that English is a second language for most all of the parties and litigants, meaning there would be interpreter costs and other burdens were the case to move on to trial. Furthermore, plaintiffs—already faced with uncertainties as to the likelihood of success for their claims—do not want to drag out recovery during trial and likely appeals. Accordingly, the Court concludes that this factor weighs in favor of approving the settlement.

**(3) The stage of the proceedings and the amount of discovery completed.**

Trial for this case is currently set for July 20, 2016. Despite the trial being close to year away, the parties have represented that extensive discovery has been conducted in this case, though many depositions remain. *See* Rec. Doc. 31-1 at 11–12. The parties contend that approving the settlement provides mutually desired certainty and resolution in the face of months, if not years, of litigation and appeals. The Court concludes this factor weighs in favor of approving the settlement.

**(4) The probability of plaintiffs' success on the merits.**

As discussed above, a bona fide dispute exists in this case, and the Court concludes that the plaintiffs are not certain to succeed on the merits of their case. Accordingly, this factor weighs in favor of approving the settlement.

**(5) The range of possible recovery.**

The record does not reflect any apparent figures on the "highest hope" damages sought by plaintiffs. Instead, the parties merely represent that the damages calculations contained in the proposed settlement reflect a compromise over disputed hours worked. A "back of the envelope" calculation based on the plaintiffs' complaint suggests at least some plaintiffs might have initially sought to recover upwards of 6000 hours of overtime pay. *See* Rec. Doc. 1 at 3 (80 hours worked per week over three-year period). The complaint, however, makes clear that the alleged overtime hours in the complaint are approximations and the parties have represented that discovery conducted so far has informed the estimated hours worked stated as to each plaintiff in the Settlement Agreement. *See id.*; *see also* Rec. Doc. 31-1 at 4–8. While the estimated overtime hours varies by plaintiff, the Court notes that average number of estimated overtime hours of each plaintiff is roughly 1,100. Based on these rough figures and noting that the Settlement Agreement provides for significant recovery by each plaintiff, the Court concludes that the settlement falls within a reasonable range of possible recovery. Accordingly, the factor appears to weigh in favor of approving the settlement.

**(6) The opinions of class counsel, class representatives and absent class members**

The Court again notes that the proposed settlement does not purport to bind any absent parties. *See* Rec. Doc. 31-1 at 14. The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). However, the Court must keep in mind that a potential conflict of interest always exists between an attorney and a class. *Collins*, 568 F.Supp.2d at 727. Because there is no evidence that plaintiffs' counsel have not worked in good faith to secure this jointly proposed settlement, the Court concludes that this factor weighs in favor of approving the settlement.

Based on consideration of the *Reed* factors and the record in this case, the Court concludes that the proposed settlement is a fair resolution of a bona fide dispute.

### III. Reasonable Attorney's Fees

Apart from the general fairness determination, the Court must also determine that the proposed attorney's fees are reasonable. *Collins*, 568 F.Supp. at 728. In this case, all plaintiffs are represented by the same individual counsel, making the analysis here rather straight forward. The Fifth Circuit employs the lodestar method for determining the reasonableness of attorney's fees in FLSA collective actions, which is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).

The Court concludes that Plaintiffs' counsel has demonstrated the reasonableness of the attorneys' fee in the Settlement Agreement. *See* Rec. Doc. 31-3. This conclusion is supported by

the fact that defendants do not oppose the calculations. *See* Rec. Doc. 31-1 at 17. Noting that plaintiffs' proposed rate appears to be at the high end of prevailing market rates, the Court nonetheless concludes that the reported hours worked is sufficiently detailed and the proposed rate of $300 per hour is reasonable given counsel's experience and expertise. At this rate and by the hours stated as worked, counsel would be entitled to a fee of $71,580, which exceeds the $67,000 counsel will receive under the proposed Settlement Agreement.

Furthermore, the Court notes that plaintiffs' counsel has a contingency fee agreement with plaintiffs that originally provided for a 40% fee, whereas counsel here receives a fee representing 33.5% of recovery. *See* Rec. Doc. 31-1 at 17. While a 33.5% fee is on the higher end of approved contingency fees, it nonetheless falls within the range of past-approved fees, in addition to being acceptable under the lodestar method. *See Collins*, 568 F.Supp.2d at 729. As such, the Court finds the attorneys' fee to be reasonable.

Accordingly,

IT IS ORDERED that the parties' joint motion for settlement approval is GRANTED and that parties are directed to carry out the terms and conditions of the approved settlement. Rec. Doc. 31.

IT IS FURTHER ORDERED that judgment be entered dismissing this case with prejudice.

New Orleans, Louisiana this 5th day of October, 2015.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE